# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**KRISTINA M. GONZALES**,

    Plaintiff,

    v.                                          Civ. No. 11-300 BB/WDS

**ALBUQUERQUE PUBLIC SCHOOLS and
JINX F. BASKERVILLE,**

    Defendants.


## MEMORANDUM OPINION

Plaintiff Kristina Gonzales brings this action alleging deprivations of her due process and equal protection rights under the Fourteenth Amendment.  She also brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII," 42 U.S.C. §§ 2000e to 2000e-17).  Defendants Albuquerque Public Schools ("APS") and Jinx F. Baskerville have filed two motions requesting that this Court grant summary judgment against Plaintiff's due process and equal protection claims brought under Section 1983, 42 U.S.C. § 1983.  *See* Docs. 18 & 36.  Having carefully reviewed the parties' submissions and relevant authorities, the Court grants both motions for summary judgment.

### Procedural Background

Originally, on April 8, 2011, Plaintiff filed a complaint in this Court alleging Title VII discrimination, due process and equal protection violations pursuant to 42 U.S.C. § 1983, and breach of contract (only as to Defendant APS).  The due process and equal protection claims turned on a sole allegation: Defendants failed to return Plaintiff to her former position at the New Futures School ("New Futures") after Plaintiff's one-year Charter School Leave of absence.  Instead, Defendants allegedly eliminated Plaintiff's position in order to retain an Anglo/non-Latino female teacher by the name of Ms. Darcy Bulland de Vallejos.  Doc. 5, ¶¶ 20-22

("Amended Complaint").  The Court will refer to this Section 1983 claim as the Charter Leave Claim.

Defendants then brought their first motion for summary judgment based on qualified immunity.  Doc. 18 ("First Motion").[1]  Defendants argued that Plaintiff lacked a protected interest in her former position at New Futures, thereby warranting summary judgment on the due process component of the Charter Leave Claim.  Defendants further argued that Plaintiff's equal protection claim failed because she was not similarly situated to her alleged replacement, Vallejos.  For these reasons, Defendants argued that the Court should grant summary judgment in their favor on the due process and equal protection claims.

In her response to Defendants' motion for summary judgment, however, Plaintiff appeared to set out new factual allegations.  Doc. 23, Ex. 1, pp. 7-8.  In particular, she claimed that in April 2010 she applied for an open position as a full-time English teacher at New Futures. *Id.* at 8.  Even though Plaintiff was on APS' "must hire" list, Defendant Baskerville allegedly hired a less-qualified Anglo woman by the name of Nelleka Sims. *Id.*  The response thus appeared to set forth additional facts supporting another potential violation of Plaintiff's equal protection and due process rights.  The Court will label this additional Section 1983 claim as the English Position Claim.

Tenth Circuit "cases interpret the inclusion of new allegations in a response to a motion for summary judgment, as a *potential* request to amend the complaint." *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (emphasis added).  Accordingly, the Court held a hearing on March 7, 2012, to determine whether to permit Plaintiff to amend her complaint to add the English Position Claim.  At the hearing, Defendants agreed there would be no prejudice in permitting Plaintiff to amend her complaint to add the claim.  Defendants, however, requested the

---

[1] In the First Motion, Defendants did not move for summary judgment in regard to Plaintiff's Title VII claim.

opportunity to file a second summary judgment motion regarding the newly-minted claim.  The

Court agreed and granted Plaintiff ten days to amend her complaint.  Plaintiff submitted a Second

Amended Complaint which included the English Position Claim.  Doc. 32, ¶ 20.  Promptly

thereafter, the Defendants filed a second motion for summary judgment regarding the English

Teacher Position and the issue of whether Defendants' decision to hire Sims violated Plaintiff's

due process and equal protection rights.  Doc. 36 ("Second Motion").

In sum then, there are currently two motions for summary judgment before the Court.

## Factual Background

The Second Amended Complaint opens with a brief resume of Plaintiff Kristina

Gonzales' professional experience as a teacher.  She was hired by APS in 2004 and taught

Language and Visual Arts at the New Futures School, an alternative school within the APS

system.  Doc. 32, ¶¶ 7-8.  She has a masters degree in Education and was certified to teach

Language and Visual Arts, History, and English as a Second Language.  *Id.* at ¶ 9.  During the

2008-2009 school year, Plaintiff taught two English courses and two Visual Arts courses at New

Futures.  Doc. 23, Ex. 1, p. 8.  Plaintiff is of Hispanic origin.  Doc. 32, at ¶ 3.

The Second Amended Complaint sets forth two factual scenarios whereby Defendants

allegedly violated Plaintiff's due process and equal protection rights.  These scenarios correspond

with Plaintiff's Charter School and English Position Claims.

## A. The Allegations and Undisputed Facts Regarding The Charter School Claim

For the 2009-2010 school year, Plaintiff requested an extended leave of absence to teach

at a charter school.  APS approved Plaintiff's request in a July 31, 2009 letter.  Doc. 18, Ex. 3.

The approval letter included an enclosure stating that "[y]ou have been approved for Charter

School Leave.  You [sic] current job will be filled and the Albuquerque Public School District is

not obligated to place you back in that position."  *Id.*  The enclosure further explained that APS

would follow the procedure set forth in the 2007 version of the Charter School Act, 1978 NMSA,

§ 22-8B-10(F), if and when the Plaintiff wanted to return to teaching at New Futures.  According to the statute, which was included in the approval letter, Plaintiff would be given "employment preference by the school district if" Plaintiff submitted a notice of intent to return within three years of taking charter school leave and "a position [for] which the [Plaintiff] is certified or is qualified to become certified is available."  *Id.*  The statute concluded with the following disclaimer: "[i]f a position for which you are qualified is not available at the end of your leave, your employment with the Albuquerque Public Schools will terminate on that date."  *Id.*

In 2010, Plaintiff timely notified APS that she would be returning to her original position as a Language and Visual Arts teacher at New Futures.  It is undisputed, however, that Plaintiff's original position at New Futures was eliminated before the start of the 2010-11 school year and was not offered during that year.  Doc. 18, Ex. A, ¶ 4; Doc. 23, Ex. 1, p. 6.  Jinx F. Baskerville, the principal at New Futures, explained that she had to eliminate one teaching position for the 2010-2011 school year to meet budget constraints.  Doc. 18, Ex. A, ¶ 4.  Baskerville reviewed the seniority data for the New Futures' staff and concluded that Plaintiff, who at that time was on Charter School Leave, had the least amount of seniority at the school.  *Id.* at ¶ 5. Thus, to meet the school's budgetary constraints, Baskerville eliminated Plaintiff's position as a Language and Visual Arts teacher.  *Id.*

Despite eliminating Plaintiff's position as a Language and Visual Arts teacher, Baskerville did not eliminate a teaching position in the area of Family and Consumer Science held by Vallejos.  *Id.* at ¶ 10.  According to Baskerville, Vallejos was employed by APS in 2001 and began working at New Futures in 2007 as the Childcare Center director.  Doc. 18, Ex. A, ¶ 9; Doc. 23, Ex. 1, p. 8.  In the spring of 2008, Vallejos changed positions and began teaching courses in Sewing and Working with Young Children.  Doc. 18, Ex. A, ¶ 10.  During each term of the 2010-2011 school year, Vallejos taught two Sewing classes and one class of Working with

Young Children. *Id.* Because Baskerville believed that Plaintiff had the least amount of seniority among the teachers employed at New Futures, she decided to retain Vallejos and eliminate Plaintiff in order to meet the school's budgetary constraints. *Id.* at ¶ 5.

Plaintiff disputes Baskerville's proffered reasons for eliminating the position for a Language and Visual Arts teacher. In Plaintiff's words, Baskerville's sworn statements are no more than "naked assertions unsupported by any evidence." Doc. 21, ¶ 3. Yet, despite this argument, Plaintiff herself fails to present any evidence, other than conclusory allegations, to place Baskerville's reasons for eliminating Plaintiff's position in dispute. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's conclusory allegations are insufficient to put a material fact in dispute").

On May 1, 2010, Plaintiff received a notice from Baskerville explaining that her position as a Language and Visual Arts teacher would be eliminated. Doc. 32, ¶ 13. In a subsequent conversation, Baskerville explained to Plaintiff that she would be placed on a "must hire" list for APS. Doc. 18, Ex. A, ¶ 6. This conversation was confirmed in a written letter on May 3. Doc. 18, Ex. A-2. In response, Plaintiff filed a Level 1 grievance through the teacher's union. Doc. 32, ¶ 21. At the grievance meeting, Plaintiff apparently complained about Baskerville's decision to retain Vallejos to teach two sewing classes and one class of working with young children per term in the 2010-2011 school year.

Following this grievance meeting, APS sent Plaintiff a letter on July 21, 2010, reinstating her to New Futures. Doc. 18, Ex. D. This reinstatement letter included an enclosure stating that APS "will attempt to place you in a teaching position for which you are licensed." *Id.* On August 7, 2010, however, Plaintiff received a follow-up letter stating that the information in the reinstatement letter was wrong due to an administrative error. Doc. 32, ¶ 23. The August 7 letter informed Plaintiff that she had been reassigned to Polk Middle School, not New Futures, to teach

Visual Arts. *Id.* When Plaintiff attempted to file a Level 2 grievance to challenge the assignment to Polk, APS explained that the time for a Level 2 appeal had expired. *Id.* at ¶ 24.

**B. The Allegations and Undisputed Facts Regarding The English Position Claim**

A full year later, in April of 2011, Plaintiff applied for a job opening at New Futures for an English position. Even though Baskerville never responded to Plaintiff's application, it is undisputed that she reviewed Plaintiff's application and gave it due consideration. Doc. 36, Ex. A, ¶ 5; Doc. 40, ¶ 5 (merely noting that Baskerville did not respond to Plaintiff). However, Baskerville decided to hire Sims for the position, not Plaintiff. According to Sims's resume, she had been teaching since 2000 and was licensed to teach, among other courses, Bilingual Education, Language Arts, and English as a Second Language. Doc. 36, Ex. 1. What is more, Sims was on the "must hire" list at the time she applied for the position. Doc. 36, Ex. 2, ¶ 6. Based solely on Sims's qualifications, Baskerville felt that Sims would be an excellent fit for the English position and hired her accordingly. *Id.* at Ex. 1, at ¶ 9.

**Standard of Review**

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)). Qualified immunity therefore "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Defendant Baskerville has asserted the defense of qualified immunity to Plaintiff's Section 1983 claims. Thus, Plaintiff bears "the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Scott v. Hern*, 216 F.3d 897, 910 (10th Cir. 2000) (quotations omitted). Although the qualified immunity analysis

6

involves a two-part inquiry, if the Plaintiff fails either prong, reviewed in any order, qualified immunity is appropriate and no further inquiry need be undertaken.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If, however, Plaintiff establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts back to Baskerville, who must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law.  *See Cortez v. McCauley*, 438 F.3d 980, 988 (10th Cir. 2006).  A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

If there is a factual dispute involving an issue on which qualified immunity turns, summary judgment based on a qualified immunity defense in a 42 U.S.C. § 1983 action is inappropriate.  *See Archer v. Sanchez*, 933 F.2d 1526, 1533 n. 1 (10th Cir. 1991).

**Analysis**

**I. Due Process Claims**

The Fourteenth Amendment protects individuals from deprivations of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  Plaintiff alleges both a procedural and substantive due process claim.

**A. Procedural Due Process**

The Tenth Circuit has directed courts to engage in a two-step inquiry to determine if a plaintiff has been denied procedural due process.  First, a court must determine whether the individual had a protected interest under the Due Process Clause. *See, e.g., Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994); *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).  If so, a court must then examine whether the individual received an appropriate level of process. *See id.*

Here, Plaintiff argues that the Defendants denied her due process by (a) failing to return her to her former position at New Futures, and (b) failing to hire her for the open English Position.  The key issue is whether Plaintiff had a protected property interest supporting either of these due process claims.

### *(1) Plaintiff had no protected interest in returning to her former position after Charter School Leave.*

Upon returning from Charter School Leave, Plaintiff was reinstated as a Visual Arts teacher, albeit at Polk Middle School.  This is not therefore a case where the Plaintiff claims a protected property interest in her continued employment with APS.  Nor is this a case involving a reduction in Plaintiff's pay or demotion in her rank or prestige.  *See, e.g.*, *Clark v. Township of Falls*, 890 F.2d 611, 617 (3d Cir. 1989) (addressing an officer's due process claim for a demotion in duties).  Rather, Plaintiff alleges that she was deprived of a more specific interest – the right to return to her exact original position as a Language and Visual Arts teacher at New Futures after her Charter School Leave.  The question then is whether Plaintiff can establish a specific property interest in this exact position.

The Supreme Court defines "property" in the context of the Fourteenth Amendment's Due Process Clause as a "legitimate claim of entitlement" to some benefit.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Id.*  Thus, constitutionally protected property interests are created and defined by statute, ordinance, contract, implied contract, and rules and understandings developed by state officials.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Perry v. Sindermann*, 408 U.S. 593, 601-03 (1972); *Roth*, 408 U.S. at 577-78; *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir. 1995).  The general rule is that "no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or

contract term to the contrary." *Anglemeyer*, 58 F.3d at 539.  This rule is not, however, absolute if an employee can point to a specific contractual provision and surrounding circumstances establishing a property interest.  *See Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003).

Here, Plaintiff points to Article 17(O)(3)(a) of the Negotiated Agreement as the specific contractual provision establishing her right to return to her former employment at New Futures.[2] Alternatively, she argues that surrounding circumstances, namely the fact that at least two other Anglo women who took an extended leave of absence from New Futures were returned to their original positions, establish her property interest.  Doc. 23, Ex. 1, p.3.  Neither of these arguments is sufficient.

To begin, Article 17(O)(3)(a) of the Negotiated Agreement details the extent of Plaintiff's right to return to her original position at New Futures after an extended leave of absence.  Article 17(O)(3)(a) states:

> A teacher returning to duty from an extended leave shall be reassigned to the original teaching position or, if that position is no longer available, to a substantially equivalent position to that held by the teacher at the commencement of the leave.

Plaintiff thus had a conditional right to be reassigned to her original position at New Futures. Crucially though, Article 17(O)(3)(a) conditions Plaintiff's right to return to her original teaching position on the *availability* of that position.  The provision clearly states that if the teacher's prior position is "no longer available," the teacher shall be reassigned to a "substantially equivalent position to that held by the teacher at the commencement of the leave."  Thus, in the scenario where a teacher's original position is no longer available, Article 17(O)(3)(a) only grants a teacher returning from leave a property interest in a "substantially equivalent position" available within the broader APS system.

_____

[2] The Negotiated Agreement was between the Albuquerque Municipal School District and the Albuquerque Teachers Federation for 2009-2011.

Here, it is undisputed that Plaintiff's teaching position at New Futures was eliminated before the start of the 2010-11 school year and was not offered to anyone that year.  Doc. 21, Ex. A, ¶¶ 7-8 Ex. 1, p. 6.  Accordingly, under the Negotiated Agreement, Plaintiff had a right to be reassigned to a "substantially equivalent position" within the APS system, but not necessarily her original position at New Futures.  In this light, Baskerville retained discretion to assign Plaintiff to an available position that was substantially equivalent to Plaintiff's original position, namely the Visual Arts position at Polk Middle School.  *See Roth*, 408 U.S. at 566–67 (no statutory or administrative standards for rehiring of non-tenured teacher, so left to "unfettered discretion of university officials"); *Anglemyer*, 58 F.3d at 539 ("an administrative decision to reassign or transfer a particular employee absent a statutory or contractual provision to the contrary is left to the 'unfettered discretion' of the employer") (quoting *Roth*, 480 U.S. at 567); *but see Hulen*, 322 F.3d at 1241.  The Negotiated Agreement does not therefore provide Plaintiff with a right to return to her original position at New Futures.

Shifting gears, Plaintiff argues that the Defendants deprived her of due process by eliminating her position rather than the position held by Vallejos in the area of Family and Consumer Science, Doc. 21 at pp. 7-8.  Plaintiff, however, fails to identify any provision in the Negotiated Agreement that would have required the Defendants to preserve Plaintiff's original position at New Futures.  While Article 17(O)(3)(a) grants Plaintiff a limited right to return to her original position, it also states that "if that position is no longer available" Plaintiff would be hired into "a substantially equivalent position."  The structure of Article 17(O)(3)(a) thus contemplates Baskerville's discretion to eliminate Plaintiff's original position during the leave of absence.  Contrary to Plaintiff's assertions then, the Negotiated Agreement did not require Defendants to fire Vallejos in order to preserve Plaintiff's original position.[3]

---

[3] Plaintiff also appears to argue that her right to return to New Futures can be found in the guidelines for transferring teachers.  Article 16(A)(2)(b) states that "[c]hanges in teaching

Plaintiff has also failed to establish a protected property interest based on the surrounding circumstances of her employment.  To have a property interest in particular employment, an employee must show that she had a "legitimate claim of entitlement" to it. *Roth*, 408 U.S. at 577. Normally, such entitlements derive from state statutes, local ordinances, established rules, or mutually explicit understandings (often contracts).  *Perry*, 408 U.S. at 601-02.  Under New Mexico law, however, it has been recognized that a constitutionally protected property interest can arise despite the absence of a statute or formal contract.  *Casias v. City of Raton*, 738 F.2d 392, 394 (10th Cir. 1984).  For example, "explicit contractual provisions may be supplemented by other agreements implied from a promisor's words and conduct in the light of the surrounding circumstances."  *Bertot v. Sch. Dist. No. 1*, 522 F.2d 1171, 1176 (10th Cir. 1975); *Archer v. Sanchez*, 933 F.2d 1526, 1531 (10th Cir. 1991); *Lopez v. Kline*, 953 P.2d 304, 307 (N.M. App. 1997) (under New Mexico contract law, the facts may "disclose the existence of an implied employment contract provision that limits the employer's authority to discharge").

Apparently relying on decisions such as *Bertot* and *Archer*, Plaintiff asserts that Baskerville reassigned at least two other teachers to their former positions after an extended leave.  Doc. 23, Ex. 1, p.3.  Plaintiff does not, however, explain how Baskerville's treatment of the two other employees implied an agreement whereby Plaintiff would be returned to her former position at New Futures, particularly when her position at New Futures no longer existed due to

---

assignments shall not be made without prior consultation between the principal and teacher so affected."  Doc. 18, Ex. E, § 16(A)(2)(b).  The Article further provides that "[c]hanges will not be made in an arbitrary or capricious manner but shall be based on verifiable instructional program requirements."  *Id.*  Here, Plaintiff alleges that she was "transferred" to Polk without prior consultation, thereby violating her due process rights.  Doc. 5, ¶.  Article 16(A)(2)(b) does not, however, apply to this case given that Plaintiff was not transferred to Polk, but rather took an extended leave of absence and was then hired for a teaching position at Polk.  Article 17(O)(3)(a), not Article 16(A)(2)(b), covers precisely this situation.  Hence, Article 16(A)(2)(b) does not support Plaintiff's theory.

budget constraints.[4]  To the contrary, upon taking leave, Plaintiff was expressly informed by APS

that she would only be given an "employment preference by the school district," not necessarily a

position at New Futures.  Doc. 18, Ex. C.  Moreover, the Negotiated Agreement only provided

Plaintiff a right to return to her original position if it was still available.  At best then, Plaintiff's

allegations regarding the two other teachers merely reflect her "desire" or "unilateral expectation"

to be returned to New Futures, but fall short of a "legitimate claim of entitlement" that would

establish a constitutionally protected property interest.  *Roth*, 408 U.S. at 577.

> ### (2) Plaintiff had no protected interest in being hired for the English position.

The Second Amended Complaint alleges that Plaintiff, despite applying for the open

English position, was never "considered" for the position by Baskerville.  Doc. 32, ¶ 20.  Absent

from the Second Amended Complaint (or either of two prior versions of the complaint for that

matter) is an allegation that Plaintiff had a right to be "hired" for the open English position.  Due

to this omission, Defendants urge a narrow construction of this claim, namely that Plaintiff has

only alleged a right to be "considered" for the English position.  Defendants note that Plaintiff

has failed to establish a constitutional right to be "considered" for the position.

For the purposes of Rule 8(a), however, pleadings are to be construed liberally.  Fed. R.

Civ. P. 8.  The Second Amended Complaint does mention Baskerville's failure to consider the

Plaintiff.  It then proceeds to emphasize Baskerville's decision to hire Sims over Plaintiff.

Similarly, in her affidavit submitted in opposition to the Second Motion, Plaintiff explains why

she should have been *hired* over Sims for the open English position. *See* Doc. 40, Ex. 1, at ¶ 10.

Taken as a whole then, the Second Amended Complaint and Plaintiff's affidavit reveal the

---

[4] Indeed, Plaintiff fails to provide any details regarding Baskerville's treatment of the
other two employees.  There are no facts regarding the seniority of those other teachers or
whether their former positions were available when they returned from leave.

contours of Plaintiff's due process claim, namely her claim that she had a right to be considered and hired for the English position given her qualifications.

Fatal to Plaintiff's claim again, however, is her failure to establish a protected property right in the prospective English position.  True, Plaintiff was on the "must hire" list going into the summer of 2011 when Baskerville posted the opening for the English position at New Futures. The "must hire" list did not, however, require Baskerville to hire or consider teachers on the list over other applicants.  Rather, the undisputed purpose of the list is to help place teachers who have lost their positions and are in need of placement with other schools within the APS system. Doc. 36, Ex. 2, at ¶ 7 (affidavit of Jessica Rivers, Employee Relations Specialist with APS). Principals may therefore choose to consider and/or ultimately hire individuals on the "must hire" list at their discretion.

The Negotiated Agreement confirms the discretionary nature of the "must hire" list. While Article 16(C) pertains to Involuntary Transfer (i.e. Must Hire) scenarios, it does not impose a mandate on principals to grant a teacher on the "must hire" list a right to be considered, let alone a right to be hired, for an open position.  Indeed, it is somewhat of an anomaly to call the list a "must hire" list; it is more aptly named the "in need of placement" list.

At best then, Plaintiff was an applicant for the open English position at New Futures. *Coleman v. Darden*, however, forecloses any argument by Plaintiff that she had a due process interest in the English position due to her status as an applicant.  595 F.2d 533, 538 (10th Cir. 1979).  There, the Tenth Circuit pointed out the obvious: "There is no constitutionally protected right to government employment."  *Id.*  Accordingly, even though the plaintiff in that case was one of the final applicants for an open position with the EEOC, he failed to demonstrate any legitimate claim of entitlement to the open position.  *Id.*  So too here, Plaintiff was merely an applicant for the English Position.  While she had a unilateral expectation in the position,

13

bolstered by her qualifications and place on the "must hire" list, that alone does not rise to the level of a constitutional interest in property. *Roth*, 408 U.S. at 577.

**(3) Even if the Negotiated Agreement could be construed to provide Plaintiff with a right to return to her original position at New Futures or a right to the English Position, Defendant Baskerville is entitled to qualified immunity.**

The qualified immunity doctrine "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting *Harlow*, 457 U.S. at 818). When a defendant pleads qualified immunity, the plaintiff has the heavy burden of establishing: (1) that the defendant's actions violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) .

In the instant case, even assuming Plaintiff had a right to return to her same position at New Futures or a right to the English position, she has failed to establish a clearly established violation of that right. The Tenth Circuit in *Anglemeyer* noted that the courts "are split on the relevance of a loss of rank, status, or salary as a result of the reassignment or transfer." 58 F.3d at 539. Courts have looked at many different factors in assessing whether and how a plaintiff has been harmed, including loss of reputation, loss of income, general economic harm, and demotion in rank or duties. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972) (reputation); *Bordelon v. Chicago Sch. Reform Bd. Of Trs.*, 233 F.3d 524, 530 (7th Cir. 2000) (economic harm); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988) (salary and rank); *Farkas v. Ross-Lee*, 727 F. Supp. 1098, 1104 (W.D. Mich.1989) (salary and rank). New Mexico courts have focused on whether an employee was denied pay. *See Bd. of Educ. v. Harrell*, 882 P.2d 511 (N.M. 1994) (holding that a temporary suspension with no loss of pay was not a

14

due-process violation because a public employee's only property interest in his or her job is in the income that comes with it); *Lovato v. City of Albuquerque*, 742 P.2d 499, 500 (N.M. 1987) (holding that employee was entitled to continued employment in the same position due in part to the additional salary associated with that position).

In the instant case, Plaintiff has failed to allege or produce evidence that she suffered a reduction in wage, rank, or status due to her assignment to Polk Middle School. As noted previously, Baskerville reassigned Plaintiff to Polk Middle School without any attendant loss in wage or status. *See, e.g.*, *Maples*, 858 F.2d at 1550-51 (holding that the transfer of tenured professors from one department to another, without loss of rank or pay, does not implicate any property interest protected by the Due Process Clause). Clearly, no established right was implicated by this reassignment. Moreover, because there was no attendant loss of pay, it is unclear whether Plaintiff even has a cognizable claim against Baskerville. Due to this ambiguity, Baskerville is entitled to qualified immunity on Plaintiff's procedural due process claim.[5]

**B. Substantive Due Process**

Plaintiff claims that Defendants violated her substantive due process rights. This claim fails because at the time of the alleged misconduct, it was not clearly established that Defendants violated substantive due process principles. To begin, the Tenth Circuit has not decided whether an employee with a property right in state-created employment is protected by the Substantive Due Process Clause. *See Hennigh*, 155 F.3d at 1257 ("We note that our circuit precedent does not clearly delineate what specific property interests in employment are fundamental, and thus protected by the doctrine of substantive due process [ ]."); *Potts v. Davis County*, 551 F.3d 1188,

---

[5] Because the Plaintiff has failed to establish the violation of a constitutionally or statutorily protected property interest, the Court need not proceed to the second step of analyzing whether the Defendants afforded Plaintiff due process. *Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1201 (10th Cir. 1999) ("Having concluded that [plaintiff] has failed to demonstrate a property interest . . ., we need go no further . . . .").

1193 n. 3 (10th Cir. 2009); *Curtis v. Okla. City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1215 n.

17 (10th Cir.1998); *Archuleta v. Colo. Dep't of Insts.*, 936 F.2d 483, 489 n. 6 (10th Cir. 1991)

(the law is "not clear what interest is required to trigger substantive due process guarantees").  It

is thus far from clear whether Plaintiff's claimed right to return to her original position after an

extended leave of absence is covered by the Substantive Due Process Clause.  Similarly, it is

unclear whether Plaintiff's claimed right to be hired for the English Position is covered by the

clause.  Due to this ambiguity, Baskerville is entitled to qualified immunity on the substantive

due process claim.

## II. Equal Protection

Equal protection "is essentially a direction that all persons similarly situated should be

treated alike." *Campbell v. Buckley*, 203 F.3d 738, 747 (10th Cir. 2000) (quotations omitted).

Here, Plaintiff asserts an equal protection claim based on a theory of disparate treatment.  Her

claim is therefore governed by the familiar three-part burden-shifting framework established in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[6]  Under this framework, the

---

[6] It is well settled that an equal protection claim under section 1983 is analyzed in the same manner as a race discrimination claim under Title VII.  *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007).  Nonetheless, Defendants argue that *McDonnell Douglas* does not apply here because Plaintiff's Title VII case is not at issue.  Doc. 42, at p. 8.  Despite this curious argument, Defendants then proceed to argue that they have carried their burden of identifying an "objectively reasonable" basis for (i) retaining Vallejos and (ii) hiring Sims rather than Plaintiff.  *Id.* at 9 (quoting *Lewis v. City of Fort Collins*, 903 F.2d 752, 754-55 (10th Cir. 1990)).  Defendants then assert that Plaintiff has failed to identify any intentional discrimination by Baskerville.  *Id.*  Accordingly, Defendants argue that summary judgment is appropriate on the equal protection claim.

In other words, Defendants ask that the Court employ a burden-shifting framework to assess Plaintiff's equal protection claim.  Defendants' proposed framework, while reliant on the Tenth Circuit case of *Lewis*, is but another way of articulating the *McDonnell Douglas* framework.  The second step of *McDonnell Douglas* asks whether the employer had a legitimate, nondiscriminatory reason for the adverse employment decision.  *McDonnell Douglas*, 411 U.S. at 802.  Put another way, the question is whether the employer had an "objectively reasonable"

Plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id.* at 802.  If Plaintiff establishes a prima facie case of disparate treatment, the burden then shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment decision.  *Id.*  If the Defendants make such a showing, the burden reverts to Plaintiff to show the proffered reason was a pretext for discrimination.  *Id.* at 804.  Plaintiff has to show "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual."  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995).

**A.  Plaintiff was not similarly situated to  Vallejos**

Plaintiff claims that she was discriminated against on the basis of national origin when Baskerville "replaced" Plaintiff with Vallejos.  Notably though, Plaintiff was not terminated, but rather transferred to Polk Middle School.  Thus, it cannot be said that she "unequivocally alleges a discriminatory discharge claim."  *See, e.g.*, *Muhic v. Pueblo Cmty. Coll.*, 2008 WL 313807, at *10 (D. Colo. Feb. 1, 2008).  Accordingly, Plaintiff must establish the three prima facie elements of a broader claim for disparate treatment, namely that (1) she was in a protected class, (2) she suffered from an adverse employment action, and (3) Baskerville treated similarly-situated non-minority employees differently.  *See Trujillo v. Univ. of Colorado Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998); *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

It is undisputed that Plaintiff is within a protected class due to her Hispanic origin.  Plaintiff has, however, failed to establish that she was "similarly situated" to Vallejos.  According

---

basis for the employment decision.  *See Lewis*, 903 F.2d at 755.  If so, the burden shifts to the plaintiff to demonstrate pretext for discrimination.  *See McDonnell Douglas*, 411 U.S. at 802.  "[A] a showing of pretext is evidence which allows a jury to infer *discriminatory intent*."  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (emphasis altered).  There is therefore little difference between Defendants' proposed approach and the familiar analytical framework employed in *McDonnell Douglas*.  Because the two approaches are functionally equivalent, the Court will apply the more familiar *McDonnell Douglas* framework.

to the Sixth Circuit, the Plaintiff and the employee she identifies as a comparator, in this instance
Vallejos, must be similarly situated "in all relevant aspects."  *Mitchell v. Toledo Hosp.*, 964 F.2d
577, 583 (6th Cir. 1992) (citations omitted); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d
1079, 1091 (11th Cir. 2004) (holding that comparators "must be nearly identical" to the plaintiff
"to prevent courts from second-guessing a reasonable decision by the employer").  Here,
however, it is undisputed that Vallejos and Plaintiff taught different courses.  Where Vallejos
taught two Sewing classes and one class of Working with Young Children during each term of
the 2010-11 school year, Plaintiff was on Charter School Leave from her position as a Visual
Arts and English teacher during the same school year.  Due to their differing course work, it
cannot be said that Plaintiff and Vallejos are similarly situated in all relevant aspects.  Plaintiff
has therefore failed to establish a prima facie case of disparate treatment.

Even assuming Plaintiff established a prima facie case of disparate treatment, Baskerville
has articulated a non-discriminatory reason for retaining Vallejos.  Specifically, Baskerville
alleges that she retained Vallejos for two reasons: (1) based on information provided by the
Human Resources Department, she believed that Vallejos was more senior than Plaintiff, and (2)
she believed retaining Vallejos would better meet the ongoing needs of New Futures.  Doc. 18,
Ex. 1, at ¶¶ 5.  These are both non-discriminatory reasons for retaining Vallejos.  *See Zamora v.
Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007) (*en banc*) (noting a defendant's burden
of production at this stage is "exceedingly light").  The burden thus shifts to Plaintiff to
demonstrate that Baskerville's proffered reasons were pretextual.

In an attempt to demonstrate pretext, Plaintiff argues that she was in fact more senior than
Vallejos.  That is, Plaintiff argues that the data provided to Baskerville by the Human Resources
Department was inaccurate.  The relevant inquiry is not whether Baskerville's preferred reasons
were factually correct, but rather whether Baskerville honestly believed those reasons and acted

18

in good faith upon those beliefs. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005) ("We have repeatedly held that the relevant inquiry in such cases concerns the belief of the employer that the employee engaged in misconduct, not whether the actual facts, as shown by evidence extrinsic to the employer's assessment, may have been otherwise."). On this determinative issue, there is no dispute that Baskerville, in good faith, believed that the seniority data provided by the Human Resources Department was accurate – data which shows that Vallejos had almost four years more seniority than Plaintiff. *See* Doc. 18, Ex. 1 at p. 7. Plaintiff has therefore failed to establish that "a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003) (quotation omitted).

**B. Plaintiff has failed to establish pretext or intentional discrimination in the hiring of Sims for the English position.**

Defendants first argue that Baskerville is entitled to qualified immunity because it was unclear whether Plaintiff needed a protected interest in the English position to assert a equal protection claim. *See Pearson v. Callahan*, 555 U.S. 223, 227 (2009) (where the constitutional right claimed was not clearly established at the time of the alleged violation, a defendant is entitled to qualified immunity). To manufacture an ambiguity in the caselaw, Defendants rely on the Tenth Circuit's decision in *Hesse v. Town of Jackson*, 541 F.3d 1240, 1248 (10th Cir. 2008). There, the Tenth Circuit dismissed *both* an equal protection and due process claim on the same grounds, namely that the plaintiff had failed to establish a "protected property interest" in continued employment. *Id.* According to Defendants, the only logical conclusion from this ruling is that the plaintiff lacked a valid equal protection claim because he lacked a protected property interest. Doc. 42, at p.7.

The *Hesse* Court did fail to demarcate with clarity the analysis appropriate for a due process claim versus an equal protection claim.  Nonetheless, it is beyond dispute, both in the Tenth and other circuits, that an equal protection claim does not depend on the existence of a property interest in employment.  *See Poolaw v. City of Anadarko*, 660 F.2d 459, 462 (10th Cir. 1981) ("the constitutional right to equal protection with regard to public employment does not depend on the existence of a property interest in that employment"); *see also Reserve, Ltd. v. Town of Longboat Key*, 17 F.3d 1374, 1381 (11th Cir. 1994) ("establishment of a constitutionally protectible property interest is wholly irrelevant to an equal protection claim").  Indeed, the text of the Fourteenth Amendment confirms that property and liberty interests are irrelevant to equal protection claims.  Of the three clauses included in the second sentence of the Amendment's first section – the privileges and immunities clause, the due process clause, and the equal protection clause – only the due process clause alludes to "property" and "liberty." *See* U.S. Const. amend. XIV, § 1.  For this reason, the Supreme Court has explained that an equal protection claim revolves around whether similarly situated persons are treated differently, not the existence of a protected property or liberty interest.  *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  Accordingly, Defendants have failed to establish an ambiguity in the law sufficient to warrant qualified immunity.

Defendants are, however, entitled to summary judgment based on the *McDonnell Douglas* burden-shifting framework.  To begin, Plaintiff has establish the prima facie elements of her failure to promote/hire claim: (i) she was of Hispanic origin, (ii) she applied for the open English Position, (iii) despite her qualifications, she was not hired for the English Position, and (iv) instead of Plaintiff,  Baskerville hired Sims, a person outside of the protected class.  *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir. 1988)).

Rather than disputing Plaintiff's prima facie case, Baskerville asserts a legitimate, nondiscriminatory reason for hiring Sims.  According to Baskerville, Sims was properly licensed for the English Position, presented a resume listing extensive teaching experience, and was also on APS' "must hire" list.   Doc. 36, Ex. 1, ¶¶ 7-9.  Due to these nondiscriminatory reasons, the burden shifts back to Plaintiff to demonstrate pretext.

To establish pretext, Plaintiff must show either that "a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  Plaintiff may accomplish this by demonstrating " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.' " *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)).  However, Plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Plaintiff first attempts to establish pretext by implying that Sims' resume, which listed over ten years of teaching experience, was inaccurate or trumped up.  Yet, despite this line of attack, Plaintiff fails to identify any inaccuracies in the resume.  Her conclusory allegations are insufficient to cast doubt on Sims' resume.  *See Ledoux*, 961 F.2d at 1537 ("conclusory allegations are insufficient to put a material fact in dispute").  Regardless, even if Sims' resume was inaccurate, or even trumped up, such inaccuracies would be irrelevant given that Baskerville relied in good faith on the resume.  *See Mosley v. Maytag Corp.*, 216 Fed. Appx. 595, 598 (7th Cir. 2007) ("where an employer has a good-faith belief that the resume is accurate, . . . an

employer cannot be accused of discrimination if it turns out that an applicant deceived the employer with a buffed-up resume").

Alternatively, Plaintiff argues that Baskerville's decision must have been driven by pretext given that Plaintiff was more qualified than Sims.  In a dispute involving relative job qualifications, discrimination will not be inferred absent a showing that Plaintiff is "significantly better qualified" for the job,  *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir.1998) (*en banc* ), or "a stark superiority of credentials" exists between the Plaintiff and the successful candidate, *Stewart v. Ashcroft*, 352 F.3d 422, 429-30 (D.C.Cir. 2003).  Plaintiff adamantly argues that she was more qualified based on her successful teaching history at New Futures, masters degree in Education, and certification to teach English as a Second Language, Doc. 40, Ex. 1, ¶ 10.  It is, however, undisputed that Sims had similar qualifications, including a ten-year history of teaching and a certification in English as a Second Language, Doc. 40, Ex. 2.  Plaintiff has thus failed to show that she was "significantly better qualified" for the job.  *Aka*, 156 F.3d at 1294. Accordingly, the Court will not infer discrimination based on Baskerville's decision to hire Sims over Plaintiff.

In sum, because Plaintiff has failed to demonstrate pretext or intentional discrimination, Baskerville is entitled to summary judgment on Plaintiff's equal protection claim for the English Position.

## Conclusion

For the foregoing reasons, the Court will grant both motions for summary judgment on Plaintiff's due process and equal protection claims.

Dated this 29th day of June, 2012.

BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE