## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

KRISTINA M. GONZALES,

       Plaintiff,

v.                                             Civ. No. 11-0300 MV/WDS

ALBUQUERQUE PUBLIC SCHOOLS,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion and Memorandum Brief in Support of its Motion for Partial Summary Judgment and Motion to Dismiss for Defendant APS [Doc. 54], filed January 23, 2013 ("APS's Motion for Summary Judgment").   The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that APS's Motion for Summary Judgment is well taken and will be granted.

## BACKGROUND

I.    Procedural Background.

On April 8, 2011, plaintiff Kristina M. Gonzales filed a complaint pursuant to 42 U.S.C. Section 1983 asserting that defendants Albuquerque Public Schools ("APS") and Jinx Baskerville ("Baskerville") violated her Fourteenth Amendment rights to procedural and substantive due process and that the defendants violated her rights under the equal protection clause by discriminating against her based upon her race.   Plaintiff further alleged that the defendants violated Title VII of the Civil Rights Act of 1964 by discriminating against her based upon her race.   In addition, the plaintiff initiated a state law breach of contract claim against defendant APS.   The due process, equal protection, and Title VII claims turned on a sole allegation:   that

the defendants failed to return the plaintiff—who is of Hispanic decent—to her former position at the New Futures School ("New Futures") after the plaintiff's one-year charter school leave of absence.  Instead, the plaintiff alleged that the defendants eliminated the plaintiff's position in order to retain a Caucasian female teacher by the name of Darcy Bulland de Vallejos ("Vallejos").

On August 19, 2011, Baskerville filed a Motion and Memorandum Brief in Support of Qualified Immunity Motion for Defendant Jinx Baskerville.   In her response to this motion, the plaintiff set forth new factual allegations indicating that she applied for an open full-time English teaching position at New Futures in April 2010, and that Baskerville allegedly hired a less-qualified Caucasian teacher by the name of Nelleka Sims ("Sims").   Because the case law from the United States Court of Appeals for the Tenth Circuit "interpret[s] the inclusion of new allegations in a response to a motion for summary judgment as a potential request to amend the complaint," *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003), the Court, with the Honorable Bruce D. Black, United States District Judge for the District of New Mexico presiding, conducted a hearing on March 7, 2012, to determine whether to permit the plaintiff to amend her complaint to add a claim based upon the defendants' failure to hire her for the open English teaching position.   At the hearing, the Court granted the plaintiff ten days to amend her complaint. Plaintiff filed a Second Amended Complaint on March 17, 2012, which added a claim based upon the failure to hire the plaintiff for the English position.   Thereafter, on May 4, 2012, Baskerville filed a Motion and Memorandum Brief in Support of Second Qualified Immunity Motion for Defendant Jinx Baskerville, seeking to dismiss the newly-added failure to hire claim.

On June 8, 2012, the parties by stipulation voluntarily dismissed the Title VII claims against Baskerville.   In a Memorandum Opinion dated June 29, 2012 ("June 29, 2012, Opinion"), the Honorable Bruce D. Black, United States District Judge for the District of New Mexico,

granted both of the motions for summary judgment and dismissed the equal protection and due process claims against Baskerville.   Thus, all claims against Baskerville have been dismissed.

The plaintiff's equal protection, due process, and Title VII claims against defendant APS are still remaining in this case and are the subject of APS's Motion for Summary Judgment.   The plaintiff's state law breach of contract claim against defendant APS is also still pending in this case, but is not a subject of the Motion for Summary Judgment.

II.   Factual Background Relevant to Motion for Summary Judgment.[1]

New Futures is an alternative combined middle- and high-school within the APS system that specifically is designed to meet the needs of teenage mothers.   New Futures is unique because it provides daycare for the children of the teenage mothers that comprise its student body.

Plaintiff was hired at New Futures in the fall of 2005.   Baskerville's affidavit indicates that the plaintiff occasionally taught English courses, but her primary assignment was to teach Art. In her affidavit, the plaintiff attests that she taught English every semester that she worked as a teacher at New Futures, that there were semesters in which she taught more English classes than Arts classes, that she was not required to attend the "elective" department meetings, and that she was required to attend—and was an active participant in—the English department meetings.

The plaintiff submitted an "Extended Leave of Absence Request – Form A" during the summer of 2009 in which she requested a charter school leave of absence to teach at New America School from August 24, 2009, through June 28, 2010.   Defendant APS approved the plaintiff's leave of absence request in writing on July 31, 2009, in its "Charter School:   Response to Leave Request Non-FMLA ("Response to Leave Request").   The Response to Leave Request included

---

[1]   Except where otherwise noted, the following facts are undisputed or construed in the light most favorable to the plaintiff.

an enclosure that provided, "You have been approved for Charter School Leave.   You[r] current job will be filled and the Albuquerque Public School District is not obligated to place you back in that position."   The enclosure further explained that APS would follow the procedure set forth in the 2007 version of the Charter School Act, N.M. Stat. Ann. § 22-8B-10(F), if and when the plaintiff wanted to return to teaching at New Futures.   According to the statute, which was included in the approval letter, the plaintiff would be given "employment preference by the school district" if the plaintiff submitted a notice of intent to return within three years of taking charter school leave and "a position [for] which the [plaintiff] is certified or is qualified to become certified is available."   The statute concluded with the following disclaimer:   "If a position for which you are qualified is not available at the end of your leave, your employment with the Albuquerque Public Schools will terminate on that date."

In 2010, the plaintiff timely notified the defendant APS that she would be returning to her original position as a Language and Visual Arts teacher at New Futures.   It is undisputed, however, that the plaintiff's original position was eliminated before the start of the 2010 to 2011 school year.   Defendant Baskerville's affidavit indicates that due to a budget deficit in the funds for the positions of child care director and child care teacher, which had been paid for through government funding but which no longer were receiving that funding, one teaching position at New Futures for the 2010 to 2011 school year had to be eliminated.[2]   Defendant Baskerville's affidavit indicates that Baskerville reviewed seniority and certification data that she received from the human resources department at APS and that this data indicated that the plaintiff had the least seniority among the teachers who were employed at New Futures.   Specifically, the data indicated

---

[2]   The plaintiff argues that the defendant APS failed to present any evidence to establish the budget change and a need to eliminate a teaching position.   The affidavit of Baskerville, however, constitutes such evidence.

that the plaintiff's seniority was August 11, 2005, and that Vallejos's seniority was September 26, 2001. After reviewing the data indicating that Vajellos's seniority was greater than the plaintiff's, and considering the ongoing needs of New Futures, Baskerville determined that the plaintiff's teaching position should be eliminated in order to meet the school's newly-imposed budgetary constraints and other needs.

The plaintiff disputes Baskerville's proffered reasons for eliminating the plaintiff's position and argues that Baskerville's sworn statements are no more than "naked assertions unsupported by any evidence." Yet the plaintiff herself fails to present any evidence, other than her own conclusory allegations to place Baskerville's proffered reasons for eliminating the plaintiff's position in dispute.

A dispute of fact exists with respect to who was the least senior teacher at New Futures. Although the data provided by the human resources department to Baskerville indicated that the plaintiff was the least senior teacher, the plaintiff's affidavit indicates that Vallejos was the least senior teacher. Plaintiff attests that New Futures hired Vallejos as the day care director in 2007, and that this managerial position is not covered in the Negotiated Agreement between Albuquerque Municipal School District No. 12 and the Albuquerque Teachers Federation 2009-2011 ("Negotiated Agreement"). Thus, the plaintiff alleges that when Vallejos accepted the position of day care director her seniority as a teacher ended. Although the data provided to Baskerville indicated that Vallejos's seniority was September 26, 2001, the plaintiff attests that Vallejos's actual seniority was the winter of 2008, which is when Vallejos stopped working as the day care director and returned to the position of teacher. Vallejos's date of hire at APS was 2001. The plaintiff's resume indicates that the plaintiff began working as a teacher, but not at New Futures, in the fall of 2004.

5

Vallejos taught Culinary Arts, Working With Young Children, and Sewing.   Plaintiff did not teach any of these courses during her employment with New Futures.   Vallejos is certified to teach in the area of Family and Consumer Science.   The plaintiff is not certified in Family or Consumer Science.   The plaintiff's resume indicates that plaintiff is certified to teach in the areas of Language Arts, Visual Arts, Teaching English as a Second Language, and Social Studies at the secondary level.

In a telephone conversation on May 1, 2010, Baskerville informed the plaintiff that her position had been eliminated due to alleged budgetary constraints and that the plaintiff would not be reinstated to that position.   Baskerville further informed the plaintiff that she would be placed on the "must hire" list for APS.   Baskerville confirmed the conversation in a letter to the plaintiff on May 3, 2010.   APS's "must hire" list is

> an internal list of teachers whose positions have been cut for budgetary or other administrative reasons within APS.   This list is sent by APS to all APS principals so that principals may at their discretion choose to interview these teachers for positions that have become available in their own schools.   The purpose of the "must hire list" is to help to place teachers [who] have lost their positions with other schools within APS organically to avoid the need for involuntary placement.   Should a teacher [who] is on the "must hire list" not obtain a position through the dissemination of the list to principals, APS will then seek to place such a teacher in an open position if possible.   In practice, the "must hire list" does not require principals to hire or consider teachers on the list over other applicants.

Furthermore, the Negotiated Agreement does not contain any provision imposing a mandate on principals to grant a teacher on the "must hire" list a right to be considered or hired for a position.

The plaintiff's affidavit indicates that "[t]wo Anglo women took a leave of absence from New Futures about the same time that Plaintiff did and both were able to return to their original positions."   The plaintiff presents no evidence regarding whether these teachers were reinstated to

positions that, at the time of their request to be reinstated, had been eliminated.

After Baskerville informed the plaintiff that she would not be reinstated to her original position, the plaintiff filed a level one grievance through her union.   Thereafter, on July 21, 2010, the defendant APS sent the plaintiff a letter entitled, "Reinstatement:  Charter School Teachers (One Year)."   This letter acknowledged the receipt of the plaintiff's request for reinstatement and provided instructions for the plaintiff to return to active employment.   The letter indicates, "Upon completion of your leave, you will be returned to New Futures, Location No. 549, subject to the assignment provisions of the [N]egotiated [A]greement."   An enclosure attached to the reinstatement letter entitled, "For Individuals Returning from Charter School Leave," explains, "[APS] will attempt to place you in a teaching position for which you are licensed.   Your name will be placed on a list for principals along with your contact information and certification. Should a principal call you for an interview, you must interview.   The district can only determine if there is an available position for you if you cooperate in returning to employment."

On or around August 7, 2010, the plaintiff was notified that the information in the July 21, 2010, reinstatement letter was an administrative error.   The plaintiff was informed on August 9, 2010, that she was to report to Polk Middle School to teach Visual Arts.

Defendant APS did not post a position for an Art teacher in the 2010 to 2011 school year or thereafter, and the art class that the plaintiff taught was not offered at New Futures during the 2010 to 2011 school year.   Defendant APS, however, did post a position for a full-time English teaching position in April 2011.   The morning the job was posted, the plaintiff applied for the opening and sent Baskerville e-mails regarding the position, but never received a response from Baskerville.   Baskerville attests in her affidavit that she gave the plaintiff's application "due consideration," but that she hired Sims, the Caucasian long-term substitute who filled the

7

plaintiff's position while the plaintiff was on leave. Baskerville's affidavit indicates that she hired Sims on the sole basis that Baskerville felt that Sims would be an excellent fit for the English position and that Baskerville did not hire Sims because of her race or national origin. Plaintiff indicates that this fact is disputed, but then presents only her own affidavit testimony arguing in conclusory form that the plaintiff's resume is superior to Sims's resume.

Sims's resume, at the time of her hire, indicated that she had a bachelor's degree in Fine Arts, that she was licensed to teach Language Arts, Visual/Fine Arts, Modern and Classical Languages, Bilingual Education, and Teaching English as a Second Language at the secondary level, and that she had been a teacher since 2000. At the time Sims applied for the position, she had only taught at APS for one full year as a regular teacher. Plaintiff's resume indicates that plaintiff has a master's degree in Education, that she is certified in Language Arts, Visual Arts, Teaching English as a Second Language, and Social Studies at the secondary level, that she began teaching in the fall of 2004, and that her tenure at New Futures began in the fall of 2005. Baskerville attests that Sims, like the plaintiff, was on APS's "must hire" list at the time of her application for the English position.

## **STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."  *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).   The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citation omitted).

Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).   If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law.  *See, e.g*., *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

## DISCUSSION

Defendant APS argues that the Court should grant summary judgment in its favor on the plaintiff's procedural and substantive due process claims because the plaintiff failed to show a protected property interest.  Defendant APS additionally argues, with respect to the plaintiff's

substantive due process claim only, that the Court should grant summary judgment on the additional ground that Baskerville's decision was rational and was not arbitrary or capricious. Defendant APS next argues that the Court should grant summary judgment on the plaintiff's equal protection claim because the plaintiff has not alleged a prima facie case of discrimination with respect to the failure to reinstate claim and because the plaintiff has not demonstrated that Baskerville's proffered reason for failing to hire the plaintiff was pretextual with respect to the failure to hire claim.   The defendant APS also argues that the Court should grant summary judgment on the plaintiff's Title VII discrimination claim for the same reason that the plaintiff's equal protection claims must fail.   The Court will address each of these arguments in turn.

I.      The Defendant APS is Entitled to Summary Judgment on the Due Process Claims.

In Count II of the Complaint, the plaintiff alleges that the defendant APS deprived her of due process under the law in violation of 42 U.S.C. Section 1983.   "Section 1983 creates no substantive civil rights, but rather only a procedural mechanism for enforcing them."   *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Thus, in determining whether the defendant APS is entitled to summary judgment, the Court's analysis must focus on the alleged violation of the due process clause under the Fourteenth Amendment to the United States Constitution.   The due process clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. XIV, § 1.   "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."   *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000); *accord Nichols v. Bd. of County Comm'rs*, 506 F.3d 962, 969 (10th Cir. 2007).

A.     The Plaintiff's Due Process Claims Must Fail because APS did not Deprive the Plaintiff of a Protected Property Interest.

The Tenth Circuit determined over thirty-five years ago "that to prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived [the] plaintiff of a protectable property interest." *Hyde Park Co.*, 226 F.3d at 1210 (citing *Weathers v. West Yuma Sch. Dist. R-J-1*, 530 F.2d 1335, 1340-42 (10th Cir. 1976)); *accord Nichols*, 506 F.3d at 969; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty[,]" and "[o]nly after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.") (citations omitted).   Only if the court determines that a protectable property interest exists must the court next examine whether the individual received an appropriate level of process.  *See Nichols*, 506 F.3d at 969 n.2; *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).

1.     The plaintiff's procedural due process claims must fail.

In its June 29, 2012, Opinion, the Court, per the Honorable Bruce D. Black, United States District Judge for the District of New Mexico, granted Baskerville summary judgment on the merits of the plaintiff's procedural due process claims on the ground that the plaintiff failed to demonstrate that she had a protected property interest in being reinstated to her original position after her return from charter school leave or that she had a protected property interest in being hired for the open English teaching position for which she subsequently applied.  *See* June 29, 2012, Op. at 8-14.   The defendant APS argues that the failure of the plaintiff to identify any protected property interest with respect to Baskerville "means that Plaintiff cannot show a procedural due process violation by . . . APS" as well.   APS's Mot. for Summ. J. at 4.   The

11

defendant APS maintains that it therefore is entitled to summary judgment on the plaintiff's procedural due process claims.

Upon returning from charter school leave, the defendant APS reinstated the plaintiff not to her original position at New Futures teaching Visual Arts and English, because this position had been eliminated, but rather to a different position at Polk Middle School teaching Visual Arts. Thus, as the Court noted in its June 29, 2012, Opinion, this is not a case in which a terminated employee claims a protected property interest in continued employment. *See* June 29, 2012, Op. at 8. Rather, the plaintiff argues that APS deprived her of a more specific interest: the right to return to her original position at New Futures. The question before the Court, therefore, is whether the plaintiff can withstand summary judgment by establishing a specific property interest in her exact position at New Futures. The Court already answered this question on the merits in the context of deciding Baskerville's motion for summary judgment, and the reasoning of that decision applies with equal force to APS's motion. *See id.* at 8-12.

In the June 29, 2012, Opinion, the Court rejected the plaintiff's argument that Article 17(O)(3)(a) of the Negotiated Agreement established her right to return to her exact position at New Futures or that the surrounding circumstances (*i.e.*, the fact that at least two other Caucasian women took an extended leave of absence from New Futures and were returned to their original positions) established her property interest. *See* June 29, 2012, Op. at 9-12. The Court concluded that Article 17(O)(3)(a) created a conditional right to be reassigned to an original position, because that article requires APS only to reassign the returning employee to a "substantially equivalent position to that held by the teacher at the commencement of the leave" if the original teaching position is no longer available. *See id.* at 9-10 (citing Negotiated Agreement, Art. 17(O)(3)(a) ("A teacher returning to duty from an extended leave shall be

reassigned to the original teaching position or, if that position is no longer available, to a substantially equivalent position to that held by the teacher at the commencement of the leave")). The Court determined that because the plaintiff's original position was eliminated prior to the start of the 2010 to 2011 school year, the plaintiff had not established a protected property interest in her original position pursuant to that article sufficient to withstand Baskerville's motion for summary judgment on the procedural due process claims. *See id.*

The Court also rejected the argument that the plaintiff had a protected property interest in not having her position eliminated and that Baskerville should have eliminated Vallejos's position instead of the plaintiff's. *See id.* at 10. United States District Judge for the District of New Mexico Bruce D. Black concluded that the plaintiff pointed to no provision in the Negotiated Agreement requiring Baskerville to fire Vallejos in order to preserve the plaintiff's original position. *See id.* Finally, the Court rejected the argument that Baskerville's treatment of returning two Caucasian women to their original position after their leaves of absence implied an agreement whereby the plaintiff would be returned to her former position when the plaintiff's position had been eliminated. *See id.* at 11. The Court noted that the plaintiff had not presented any evidence that the two Caucasian teachers were returned to positions that had been eliminated, *see id.* at 11 n. 4, and reasoned that the Negotiated Agreement did not create a property right because it contained only a conditional right to return to an original position if the original position was still available, *see id.* at 11.

The Court agrees with defendant that the Court's holdings from the June 29, 2012, Opinion deciding Baskerville's motion for summary judgment apply with equal force to the plaintiff's procedural due process claims against the defendant APS. The plaintiff's claims against Baskerville and APS are premised on the same alleged wrongful conduct. To sustain a due

13

process claim against either APS or Baskerville, the plaintiff must establish as a threshold matter that she had a protectable property interest.   *Cf. Hyde Park Co.*, 226 F.3d at 1210 (citing *Weathers*, 530 F.2d at 1340-42); *accord Nichols*, 506 F.3d at 969.   The Court already has determined that the plaintiff has failed to establish such an interest, and the Court adopts and incorporates as if fully restated herein the reasoning in the June 29, 2012, Opinion on which the Court based its decision.   For the reasons articulated in the prior opinion and herein, the Court grants the defendant APS's Motion for Summary Judgment on the plaintiff's procedural due process claim premised on the defendant APS's failure to reinstate her to her original position at New Futures.

The Court also grants the defendant APS's Motion for Summary Judgment on the plaintiff's procedural due process claim premised on the defendant APS's failure to hire the plaintiff for the open English teaching position.   In the June 29, 2012, Opinion, the Court held that the plaintiff had failed to demonstrate a protectable property interest in being hired for the English teaching position.   The Court noted that the Tenth Circuit has pointed out the obvious:   "There is no constitutionally protected right to government employment."   *Coleman v. Darden*, 595 F.2d 533, 538 (10th Cir.), *cert. denied*, 444 U.S. 927 (1979).   Furthermore, the Court was not persuaded by the fact that the plaintiff was on the "must hire" list, because principals in their discretion may—or may not—consider or hire persons named on the list.   *See* June 29, 2012, Op. at 13.   Furthermore, the Court reasoned that the Negotiated Agreement confirmed the discretionary nature of the "must hire" list, because the Agreement does not contain any provision imposing a mandate on principals to grant a teacher on the "must hire" list a right to be considered,

14

let alone hired, for a position.[3]   Thus, the Court concluded that the plaintiff had failed to demonstrate a protectable property interest and granted Baskerville's motion for summary judgment on the plaintiff's procedural due process claims.   *See id.* at 13-14.   The holdings of the Court in the June 29, 2012, Opinion apply with equal force to APS's Motion for Summary Judgment.   Accordingly, the Court adopts and incorporates the reasoning from the June 29, 2012, Opinion herein, and grants the defendant APS's Motion for Summary Judgment on the procedural due process claim premised on the defendant's failure to hire the plaintiff for the open English teaching position.

2.      The plaintiff's substantive due process claim must fail.

The defendant APS also moves for summary judgment on the plaintiff's substantive due process claims.   The plaintiff's substantive due process claims are premised on the same conduct that forms the basis of her procedural due process claims.   The sole allegation in the Second Amended Complaint that charges the defendant with a due process violation simply references "due process" generally and does not identify any distinction between a procedural and substantive component of the plaintiff's claims.   *See* Second Am. Compl. ¶ 36 ("The acts of Defendant Baskerville and Defendant APS as described herein have deprived the Plaintiff of due process and equal protection under the law, and the Plaintiff is entitled to relief and damages.").

The Court already concluded, in the context of deciding whether the plaintiff's procedural due process claims withstand summary judgment scrutiny, that the plaintiff failed to demonstrate that she had a protectable property interest in being reinstated to her original position at New Futures or in being hired for the new English teaching position.   Because the plaintiff's

---

[3]   As the Honorable Judge Bruce D. Black recognized, "it is somewhat of an anomaly to call the list a 'must hire' list; it is more aptly named the 'in need of placement' list."   June 29, 2012, Op. at 13.

substantive due process claims are premised on the same conduct as her procedural due process claims, and both the substantive and procedural claims require a showing of a protected property interest, the substantive claims necessarily must fail. *Cf. Nichols*, 506 F.3d at 969. Thus, the Court grants APS's Motion for Summary Judgment on the substantive due process claims for the same reasons it granted the motion on the procedural claims.

       B.       Baskerville's Actions were Rational and not Arbitrary or Capricious.

The defendant APS additionally moves for summary judgment on the plaintiff's substantive due process claims on the ground that Baskerville's actions in failing to reinstate the plaintiff to her original position and in failing to hire the plaintiff for the open English teaching position do not "'shock[] the conscience of federal judges.'" APS's Mot. for Summ. J. at 5 (quoting *Moore v. Gurthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)). The Court, however, need not decide this question. The Court already has held that the plaintiff's substantive due process claims cannot withstand summary judgment because she has failed to demonstrate that she had a protectable property interest. This holding is dispositive. Thus, the Court declines to address the defendant APS's additional argument that Baskerville's conduct does not "shock the conscience" of federal judges.

II.     <u>The Defendant APS is Entitled to Summary Judgment on the Equal Protection Claim</u>.

In Count II of the Complaint, Plaintiff alleges that the defendant APS deprived her of equal protection under the law in violation of 42 U.S.C. Section 1983. Because "Section 1983 creates no substantive civil rights, but rather only a procedural mechanism for enforcing them," *see Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989), the Court's analysis must focus on the alleged violation of the equal protection clause of the Fourteenth Amendment. The equal protection clause provides that no state shall "deny to any

16

person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *Campbell v. Buckley*, 203 F.3d 738, 747 (10th Cir. 2000) (quotations omitted).

The plaintiff asserts an equal protection claim based upon a theory of disparate treatment, to which the familiar three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973), applies. Under this framework, the plaintiff has the initial burden of setting forth a prima facie case by establishing that (1) she was in a protected class, (2) she suffered from an adverse employment action, *see Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998), and (3) the adverse employment action occurred under circumstances that give rise to an inference of discrimination, *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000).[4] With respect to this third element, a plaintiff may raise an inference of discrimination by demonstrating that the defendant treated similarly-situated non-minority employees differently. *Cf. Trujillo v. Univ. of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998); *Maldonado*, 433 F.3d at 1307 (in a disparate-treatment case, "'[p]roof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in treatment'" (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)).[5] If the plaintiff establishes a prima facie case, the burden shifts to the defendant

---

[4] *See also Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006) ("In disparate-treatment discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII.") (quotations and alterations omitted), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

[5] Proof that similarly situated individuals are treated in a preferential manner is one way to establish a prima facie case but it is not necessarily the only way. *See Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981) (prima facie standard is not inflexible; Supreme Court specification of prima facie proof required is not necessarily applicable in every factual situation); *see also Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). A plaintiff

APS to show a legitimate, nondiscriminatory reason for the adverse employment action.  *Cf.*
*Trujillo*, 157 F.3d at 1215.   If the defendant makes this showing, the burden shifts back to the
plaintiff to show "that there is a genuine dispute of material fact as to whether the employer's
reason for the challenged action is pretextual and unworthy of belief."  *Id.*

> A.   Plaintiff's Equal Protection Claim Based on the Failure to Reinstate Must Fail
>      because Plaintiff has not Established a Prima Facie Case.
>
> 1.   The Plaintiff and Vallejos were not Similarly Situated.

The defendant APS argues that Court already held in the June 29, 2012, Opinion, that the
plaintiff failed to satisfy her prima facie case because she did not point to facts demonstrating that
the plaintiff and Vallejos were similarly situated.   The Court therefore dismissed the plaintiff's
equal protection claim against Baskerville on the merits.   The defendant APS contends that
"Plaintiff's failure to show that she was similarly situated for one decision[ for Baskerville] means
that Plaintiff cannot show an equal protection violation by . . . APS."   APS's Mot. for Summ. J. at
7.   Thus, APS argues that the Court should grant summary judgment on the plaintiff's
failure-to-reinstate equal protection claim for the same reasons it granted summary judgment to
Baskerville.

To satisfy the third element of her prima facie case, the plaintiff has attempted to

---

must simply point to some evidence that demonstrates that the alleged adverse employment action
occurred under circumstances that give rise to an inference of discrimination.  *See id.*  Plaintiff
maintains that her prima facie case includes a showing that "similarly situated employees were
treated differently from her" and argues that she has satisfied this showing.   Resp. to APS's Mot.
for Summ. J at 3.   The Court therefore analyzes the plaintiff's claim using the similarly-situated
method of establishing a prima facie case.   The Court notes, however, that even if the plaintiff had
argued that an alternative method of proof applied and pointed to evidence sufficient to raise an
inference of discrimination under that method, the Court nonetheless would grant the defendant
APS's Motion for Summary Judgment on the ground that the plaintiff has not established that she
suffered an adverse employment action when APS transferred her to a teaching position at Polk
Middle School.  *See infra* p. 23-24.

demonstrate that Baskerville treated similarly-situated non-minority employees differently.   *Cf.*
*Trujillo*, 157 F.3d at 1215; *Jones*, 203 F.3d at 753; *see also supra* note 5.   To satisfy her burden by
this manner of proof, the plaintiff must establish that the comparable employee was similarly
situated "in all relevant respects" to the plaintiff.   *Cf. McGowan v. City of Eufala*, 472 F.3d 736,
745 (10th Cir. 2006) ("To show disparate treatment, [the plaintiff] must establish she was similarly
situated to [the comparable employee] in all relevant respects.") (citation omitted); *see also Wilson
v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (holding that comparators "must be
nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by
the employer").   In determining whether two employees are similarly situated, a "court should . . .
compare the relevant employment circumstances, such as work history and company policies,
applicable to the plaintiff and the intended comparable employee[]." *Aramburu v. Boeing Co.*,
112 F.3d 1398, 1404 (10th Cir. 1997).   Whether employees are similarly situated in all relevant
respects is a fact-intensive inquiry, and what facts are relevant will vary depending on the case.
*Lucero v. Sandia Corp.*, No. 11-2028, 2012 WL 3667449, at *4 (10th Cir. Aug. 28, 2012) (citing
*Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (citation omitted); *Good v.
Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) ("To determine whether a . . .
co-worker was similarly situated . . . , a court must make a 'flexible, common-sense' evaluation of
the relevant factors.")).

    In the June 29, 2012, Opinion, the Court concluded that the plaintiff and Vallejos were not
similarly situated in all relevant respects, because the plaintiff and Vallejos taught different
courses.   *See* June 29, 2012, Op. at 18.   The evidence indicates that Vallejos taught Sewing
and/or Culinary Arts as well as Working With Young Children.   Plaintiff did not teach any of
these classes during her employment with New Futures, but rather taught English and Visual Arts.

The Court also concludes that the plaintiff and Vallejos are not similarly situated in all relevant respects because their certifications, dates of hire, and seniority differed.   At the time of Baskerville's decision, Vallejos was certified to teach in the area of Family and Consumer Science, while the plaintiff was certified in the Language Arts, Visual Arts, Teaching English as a Second Language, and Social Studies at the secondary level.   Moreover, although Vallejos's seniority may have been less than the plaintiff's, the number of years Vallejos worked for the district exceeded the plaintiff's.   Vallejos's date of hire by APS was 2001 while the plaintiff's date of hire was 2005.

Furthermore, the information that Baskerville received from the human resources department indicated that the plaintiff and Vallejos were not similarly situated because Vallejos's seniority was reportedly greater than the plaintiff's.   Specifically, the information indicated that Vallejos's seniority was September 26, 2001, and that the plaintiff's seniority was August 11, 2005.   The Tenth Circuit instructs a district court to "compare the relevant employment circumstances . . . applicable to the plaintiff and the intended comparable employee[]" to determine whether the employees are similarly situated.   *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).   In this case, the question of seniority is a relevant circumstance, for seniority was one of Baskerville's reasons for eliminating the plaintiff's position, and therefore the Court must consider seniority in deciding whether the plaintiff and Vallejos were similarly situated.   For purposes of this inquiry, it matters not that the information that Baskerville received was inaccurate.   Plaintiff and Vallejos were not similarly situated because their seniorities in fact differed.   Moreover, because Baskerville received false information from the human resources department, Baskerville perceived the seniorities to differ by four years in Vallejos's favor.

Because the subjects taught, certifications, dates of hire, and seniority of the plaintiff and

Vallejos differed, the Court concludes that the plaintiff and Vallejos were not similarly situated in all relevant respects.   Because the plaintiff attempted to raise an inference of discrimination only by showing that a similarly situated employee was treated differently, and the plaintiff failed to point to evidence sufficient to satisfy this showing, *see supra* note 5, the plaintiff's equal protection claim premised on the defendant's decision to transfer the plaintiff to Polk Middle School to teach Visual Arts instead of reinstating her to her original position to teach Visual Arts and English at New Futures must fail.   Accordingly, the Court grants the defendant APS's Motion for Summary Judgment on the equal protection claim premised on the failure to reinstate.

> 2.      A Lateral Transfer is not an Adverse Employment Action.

The defendant APS also argues that the Court should grant summary judgment in its favor on the plaintiff's failure-to-reinstate equal protection claim on the ground that a lateral transfer does not constitute an adverse employment action.   *Cf. Trujillo*, 157 F.3d at 1215 (to satisfy the second element of a prima facie case a plaintiff must establish that she suffered from an adverse employment action).   The Court agrees and grants summary judgment in the defendant's favor on this independent ground as well.

The Tenth Circuit liberally defines the phrase "adverse employment action."   *Sanchez v. Den. Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998) (citations omitted).   Such actions are not simply limited to monetary losses in the form of wages or benefits.   *See id.* (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986-87 (10th Cir. 1996)).   Instead, the Tenth Circuit takes "a case-by-case approach," examining the unique factors relevant to the situation at hand.   *Id.* (citation omitted).   The Tenth Circuit has held, however, that "[m]ere convenience or an alteration of job responsibilities" is not an adverse employment action.   *Id*.   To constitute an adverse employment action, the plaintiff must show "a significant change in employment status, such as

hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quotations omitted).

In *Sanchez v. Denver Public Schools*, the plaintiff-teacher alleged that the school district discriminated against her when it initiated an involuntary transfer of the plaintiff from teaching fourth grade at one school to second grade at another school within the same district. *See id.* at 530. Although the teacher's commute increased from between five and seven minutes to between thirty and forty minutes, her salary and benefits remained the same. *See id.* Although the transfer was inconvenient, the Tenth Circuit concluded that it was nothing more than a "purely lateral transfer" and that it did not constitute an adverse employment action. *Id.* The *Sanchez* court explained, "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action." *Sanchez*, 164 F.3d at 532 n.6 (citation omitted).

Likewise, in *Wheeler v. BNSF Railway Co*., the Tenth Circuit rejected the painter-plaintiff's argument that she suffered an adverse employment action when her employer failed to transfer her from Lincoln, Nebraska to Topeka, Kansas. *See* No. 10-3155, 2011 WL 1226935, *10 (10th Cir. Apr. 4, 2011). The *Wheeler* court concluded that there was no evidence in the record from which a jury could reasonably find that a painter position in Topeka was objectively more desirable or advantageous than a painter position in Lincoln. *See id.* Instead, the record indicated only that the plaintiff desired to transfer back to Topeka for subjective reasons. *See id.* Thus, the *Wheeler* court held that a jury could not reasonably conclude that the employer's actions were "materially adverse." *See id.* (citing *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007) (rejecting similar claim by plaintiff that employer refused to

provide him with use of a state vehicle); *LePique v. Hove*, 217 F.3d 1012, 1013 (8th Cir. 2000) (holding "that a decision to transfer an employee to another city, a transfer that the employee did not want, is not an adverse employment action of sufficient consequence to justify an action under Title VII, assuming[] that the job to which the employee is being transferred is of equal pay and rank and with no material change in working conditions"); *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (rejecting the plaintiff's assertion that a purely lateral transfer constituted an adverse employment action and concluding that a desire to shorten a commute could not "have any effect on whether [the court] view[ed] the transfer as a purely lateral one")).

The plaintiff has failed to present evidence that the transfer to Polk Middle School was an adverse employment action.  *Cf. Mirzai v. State of N.M. Gen. Servs. Dep't*, 506 F. Supp. 2d 767, 787 (D.N.M. 2007) (the plaintiff has the "responsibility to bring forth evidence that the transfer was adverse").  The plaintiff has alleged that the defendant APS transferred her from New Futures, a combined middle- and high-school, where she taught Visual Arts and English, to Polk, a middle school, where she would teach Visual Arts.   The plaintiff has not alleged that this transfer was accompanied by any change in her salary or benefits, or that the transfer resulted in any significant change in her responsibilities.  In fact, the plaintiff does not present any evidence comparing the conditions of her employment at New Futures with the conditions of her employment at Polk Middle School.

Thus, as in *Wheeler* and *Sanchez*, there is no evidence in the record that the New Futures teaching position was objectively more desirable or advantageous than the teaching position at Polk Middle School.  *Cf. Wheeler*, 2011 WL 1226935, *10; *Sanchez*, 164 F.3d at 532 n.6. Rather, the transfer appears to be purely lateral with no significant changes in the plaintiff's

conditions of employment.    The plaintiff's reasons for preferring New Futures appear to be purely

subjective.    *Cf. id.*    The "fact that [an] employee views [a] transfer either positively or negatively

does not of itself render the . . . receipt of the transfer [an] adverse employment action."    *Id.*

(citation omitted).    To the contrary, the inquiry whether an employment action is adverse does not

turn on a plaintiff's personal feelings.    *See id.*; *Wheeler*, 2011 WL 1226935, *10.    There must be

some significant changes in the conditions of employment.    *Cf. Sanchez*, 164 F.3d at 532 n.6

(citation omitted).    Here, the plaintiff has alleged no such significant changes.    Accordingly, the

plaintiff has not established the second element of her prima facie case and the Court grants

summary judgment on the failure-to-reinstate equal protection claim for this reason.

>    B.    The Plaintiff's Equal Protection Claim Premised on the Failure to Hire Must Fail
>    because the Plaintiff has not Established that Baskerville's Proffered Reason was
>    Pretextual.

The defendant APS also argues that the Court already has held that the plaintiff's equal

protection claim against Baskerville premised on the failure to hire the plaintiff for the open

English teaching position must fail because the plaintiff has not established that Baskerville's

proffered reason for hiring Sims instead of the plaintiff was pretextual, and that this holding

applies with equal force to the defendant APS.    The Court agrees.

Baskerville's affidavit indicates that she hired Sims—the Caucasian, long-term substitute

teacher who filled the plaintiff's position while the plaintiff was on leave—on the sole basis that

Baskerville felt that Sims would be an "excellent fit" for the English position and that she did not

hire Sims because of her race or national origin.    Plaintiff argues that this reason was pretextual,

and presents the plaintiff's own affidavit testimony suggesting that the plaintiff's resume was

superior to Sims's resume.

Sims's resume at the time of her hire indicated that she was licensed to teach Language Arts, Visual/Fine Arts, Modern and Classical Languages, Bilingual Education, and Teaching English as a Second Language at the secondary level, and that she had been a teacher since 2000 and therefore had more than ten years of teaching experience.   Plaintiff is certified to teach Language Arts, Visual Arts, Teaching English as a Second Language, and Social Studies at the secondary level.   At the time Sims applied for the English position, Sims had only taught at APS for one full year as a regular teacher, whereas the plaintiff had taught at APS since 2005.   Both the plaintiff and Sims were on the "must hire" list at the time of their applications for the English teaching position.[6]

On this evidence, the Court held in the June 29, 2012, Opinion, that Baskerville had asserted a legitimate nondiscriminatory reason for hiring Sims for the English position, and that the plaintiff had failed to demonstrate pretext by pointing to facts showing that "'a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence.'"   June 29, 2012, Op. at 21 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).   A plaintiff shows pretext by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find . . . unworthy of

---

[6]   The plaintiff argues that Sims should not have been on the list because Sims had not worked at APS for at least three years.   In support of this proposition, the plaintiff cites Article 14 of the Negotiated Agreement, which governs seniority and reductions-in-force.   Subsection (B)(1)(d) of Article 14, discusses layoffs, and provides in relevant part:   "A certified school instructor, having three (3) or more full-contract, consecutive years of service, shall not be laid off if there is an available teaching position in the District for which the instructor is certified and qualified."   The plaintiff does not provide any evidence that teachers may not be placed on the internal APS "must hire" list unless they meet the layoff requirements of Article 14.   Furthermore, there is no provision in the Negotiated Agreement which provides that APS can only hire teachers on the "must hire" list if they have three or more years of experience.   Indeed, as previously discussed, the "must hire" list actually is discretionary in nature.   *See supra* p. 14-15.

credence" and hence infer that the employer did not act for the asserted nondiscriminatory reasons. *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)).

The Court concluded that the plaintiff's attempts to establish pretext were not sufficient as a matter of law to withstand summary judgment.   Although the plaintiff attempted to demonstrate pretext by implying that Sims's resume, which listed over ten years of teaching experience, was inaccurate, the Court concluded first that the plaintiff had failed to present any non-conclusory facts showing that the resume was inaccurate, and second held that even if Sims' resume was "trumped up," such inaccuracies would be irrelevant given that Baskerville relied in good faith on the resume.   *See* June 29, 2012, Op. at 21 (citing *Mosely v. Maytag Corp.*, No. 06-1556, 2007 WL 627876, at *3 (7th Cir. Feb. 28, 2007) ("where an employer has a good-faith belief that the resume is accurate, . . .   an employer cannot be accused of discrimination if it turns out that an applicant deceived the employer with a buffed-up resume")); *see also Konzak v. Wells Fargo Bank, N.A.*, No. 11-1485, 2012 WL 3104872, at *5 (10th Cir. Aug. 1, 2012) ("We do not ask whether the employer's reasons were wise, fair or correct," because "the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them," and "[e]ven a mistaken belief can be a legitimate, non-pretextual reason for an employment decision") (internal quotation marks and citation omitted); *accord Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007).

Furthermore, although the plaintiff also argued that Baskerville's decision must have been driven by pretext because the plaintiff was in fact more qualified than Sims, the Court rejected this argument.   The Court explained that "in a dispute involving relative job qualifications, discrimination will not be inferred absent a showing that Plaintiff is 'significantly better qualified'

for the job," or there is a "'stark superiority of credentials' . . . between the Plaintiff and the successful candidate."   June 29, 2012, Op. at 22 (quoting *Aka v. Ash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc); *Stewart v. Ashcroft*, 352 F.3d 422, 429-30 (D.C. Cir. 2003)). The Court rejected the plaintiff's argument that she was more qualified because she had taught at New Futures longer than Sims, had a master's degree in Education, and was certified to teach English as a Second Language, and concluded that Sims had similar qualifications, including a ten-year history of teaching and a certification in English as a Second Language.   *See id.* (citing Doc. 40, Exh. 1 ¶ 10 and Exh. 2).   For these reasons, the Court granted Baskerville's motion for summary judgment on the equal protection claim premised on the failure to hire the plaintiff for the English teaching position.   *See id.*

The evidence before the Court on APS's Motion for Summary Judgment confirms that the plaintiff's and Sims's credentials are roughly comparable.   Sims's resume, at the time of her hire, indicated that she was licensed to teach Language Arts, Visual/Fine Arts, Modern and Classical Languages, Bilingual Education, and Teaching English as a Second Language at the secondary level, whereas the plaintiff's resume indicates that she is certified in Language Arts, Visual Arts, Teaching English as a Second Language, and Social Studies at the secondary level.   Furthermore, although the evidence demonstrates that the plaintiff had been teaching at New Futures since 2005, while Sims had only had one full year of teaching experience at New Futures, Sims' resume at the time of her hire indicated that she actually had several years more experience working as a teacher than the plaintiff.   Furthermore, although the plaintiff has a master's degree in education and Sims only has a bachelor's degree in fine arts, Sims's greater experience arguably offsets the lack of a graduate degree.   Because the qualifications are comparable, and no "stark superiority of credentials" exists, *see Stewart v. Ashcroft*, 352 F.3d 422, 429-30 (D.C. Cir. 2003), the plaintiff has

not met the standard necessary to demonstrate that Baskerville's reason was pretextual.

The Court concludes that the reasoning of the June 29, 2012, Opinion granting Baskerville's motion for summary judgment on the failure-to-hire equal protection claim applies equally to APS's Motion for Summary Judgment, because both claims are premised on the same alleged wrongful conduct. Accordingly, the Court incorporates the reasoning of the June 29, 2012, Opinion herein and concludes that for the reasons set forth in that opinion, as well as those set forth herein, the Court grants APS's Motion for Summary Judgment on the failure-to-hire equal protection claim.

III.    The Defendant APS is Entitled to Summary Judgment on the Title VII Claim.

Title VII of the Civil Rights Act of 1964, as amended in 1972, requires employers to make personnel decisions without discriminating against employees based upon their race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. In Count I of the Complaint, Plaintiff alleges that she was "deprived of her employment at New Futures because of her race [when] her position was eliminated through pretext, sham and misrepresentation," that Baskerville deprived her of her position "on the pretext of budget constraints [when] in fact [Baskerville] filled the position with a less-qualified Anglo person," and that "Defendant APS failed to provide an adequate remedy for the Plaintiff to contest the pretextual reduction-in-force of the Plaintiff." Second Am. Compl. ¶¶ 33-35. Defendant APS moves for summary judgment on this claim, arguing that the plaintiff's claim must fail because she has not satisfied her prima facie burden of establishing that she was similarly situated to Vallejos or that the plaintiff suffered an adverse employment action.

The plaintiff's initial burden of establishing a prima facie case of discrimination pursuant to Title VII is identical to her initial burden of establishing a prima facie case under the equal

protection clause.  *See Trujillo*, 157 F.3d at 1215 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802); *Maldonado v. City of Altus*, 433 F.3d 1294, 1307 (10th Cir. 2006) ("In disparate-treatment discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII.") (quotations and alterations omitted), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also* June 29, 2012, Op. at 16 n.6 (citing *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007)). Because the Court already has held that the plaintiff has not satisfied her burden of pointing to facts sufficient to state a prima facie case of discrimination under the equal protection clause, *see supra* at 20-21, 23-24, the plaintiff's Title VII claim likewise must fail.  The Court therefore grants summary judgment in defendant APS's favor on the plaintiff's Title VII claim.

IV.    <u>State Law Breach of Contract Claim</u>

As set forth above, the Court has decided to grant summary judgment to APS on plaintiff's federal claims.   Having thus disposed of all of the federal claims in this action, this Court is authorized to dismiss the plaintiff's supplemental state claim as well.   *See Bateman v. City of West Bountiful*, 89 F.3d 704, 709 (10th Cir. 1996).

Specifically, the Court has discretion to decline to exercise jurisdiction where, as here, it has dismissed "all claims over which it has original jurisdiction."   28 U.S.C. § 1367(c)(3).   "The Supreme Court has instructed that 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.'" *Merrifield v. Bd of County Comm'rs for Santa Fe*, 654 F.3d 1073, 1085 (10th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).   Further, the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only

issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."   *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010).

Taking into consideration the relevant factors, and following Tenth Circuit precedent, the Court declines to exercise supplemental jurisdiction over the plaintiff's claim for breach of contract.   The interests of judicial economy, convenience, fairness and comity all weigh in favor of allowing the state court the opportunity to resolve this claim.   Accordingly, the Court will dismiss, without prejudice, the state law claim in its entirety.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that Defendant's Motion and Memorandum Brief in Support of its Motion for Partial Summary Judgment and Motion to Dismiss for Defendant APS [Doc. 54], filed January 23, 2013, is hereby granted.


Dated this 26th day of September, 2013.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE